Andrew T. Oliver (Cal Bar No. 226098)
Vinay V. Joshi (Cal Bar No. 213487)
AMIN, TUROCY & WATSON LLP
160 West Santa Clara Street, Suite 975
San Jose, CA 95113
Telephone: 650-393-0634
Email:        aoliver@ATWiplaw.com
              vjoshi@ATWiplaw.com

Attorneys for Plaintiff
ZeetoGroup, LLC

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

'25CV2031 H    DDL

ZEETOGROUP, LLC,

              Plaintiff,

      v.

PUSHNAMI LLC, DIGIPROPZ, LLC,
EMERSON SMITH, CLAIRE SMITH,
JOSHUA BRIGGS, GAVIN GAYDEN,
and DOES 1-10,

              Defendants.

Case No. _____-cv-_____

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF RELATING TO:
(1) FEDERAL TRADE SECRET MISAPPROPRIATION;
(2) CALIFORNIA TRADE SECRET MISAPPROPRIATION;
(3) BREACH OF CONTRACT;
(4) BREACH OF IMPLIED-IN-FACT CONTRACT;
(5) FEDERAL VIOLATION OF DIGITAL MILLENIUM COPYRIGHT ACT;
(6) CALIFORNIA FRAUD;
(7) CALIFORNIA FRAUD BASED ON CONTRACT; (8) CALIFORNIA CONSTRUCTIVE FRAUD; (9) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS; (10) VIOLATION OF CALIFORNIA PENAL CODE §502; (11) CALIFORNIA UNFAIR COMPETITION; and
(12) COMMON LAW UNFAIR COMPETITION.**

**DEMAND FOR JURY TRIAL**

COMPLAINT

Case No. _____-cv-_____

Plaintiff ZeetoGroup, LLC ("Plaintiff" or "Zeeto") files this original Complaint against Defendants Pushnami LLC ("Pushnami"), Digipropz, LLC ("Digipropz"), Emerson Smith ("ESmith"), Claire Smith ("CSmith"), Joshua Briggs ("Briggs"), Gavin Gayden ("Gayden"), and Does 1-10 (collectively "Defendants") for (1) Federal Trade Secret Misappropriation; (2) California Trade Secret Misappropriation; (3) Breach of Contract; (4) Breach of Implied-In-Fact Contract; (5) Federal Violation of Digital Millenium Copyright Act; (6) California Fraud; (7) California Fraud Based on Contract; (8) California Constructive Fraud; (9) Tortious Interference With Prospective Economic Relations; (10) Violation of California Penal Code §502; (11) California Unfair Competition; and (12) Common Law Unfair Competition.  Plaintiff expects to add Copyright Infringement when the U.S. Copyright Office has issued requested copyright registration certificates.

1.     Upon information and belief, Zeeto will seek a damages award in excess of $26 million for Defendants' malfeasance and an exemplary/punitive damages award of at least twice that amount (i.e., $52 million) for Defendants' willful, malicious, and fraudulent behavior, estimated to result in a total damages request in excess of $77 million.

2.     Zeeto was founded in 2010.  Since 2013, Zeeto has developed and refined a proprietary advertising technology system that powers what has come to be recognized as the industry-standard "path" model.  Certain exclusive, novel, and inventive aspects of Zeeto's systems embody inventions disclosed in Zeeto's U.S. Patent No. 11,609,952, which issued in 2023.

3.     Zeeto and it's affiliated entity Tibrio build consumer-facing websites designed to attract users.  Then Zeeto acquires traffic to drive users to visit those websites.  When users arrive at one of the websites, the users register and provide basic information.  Zeeto then asks the users a series of qualifying questions to collect valuable

COMPLAINT

2

Case No. _____-cv-_____

and actionable data about the users. Zeeto serves advertisements to the users based on their responses, thereby generating revenue.

4. Following a user's registration, the user is re-engaged by Zeeto through various marketing channels, including email and SMS text messages.

5. The combination of the above actions form an end-to-end monetization strategy that has been the foundation of Zeeto's business since 2013.

6. To support its business, Zeeto built a sophisticated technology platform that automates much of the process and that performs tests and generates sophisticated tracking metrics.

7. Zeeto also developed a high-value marketplace of dozens of advertisers who actively bid on ad inventory.

8. Zeeto built its own network of optimized properties to ensure system profitability.

9. Zeeto has developed and protected numerous trade secrets that power and increase performance and profitability of Zeeto's systems.

10. Zeeto entered an agreement with Defendants to work together. Working together using Zeeto's intellectual property and expertise and Defendants' traffic, the parties built a platform that was generating tens of millions of dollars in annual revenue.

11. Upon realizing the immense value of Zeeto's technology and intellectual property, Defendants engaged in multiple torts to take Zeeto's contractually agreed on share of the revenue from Zeeto and appropriate that revenue for Defendants' benefit.

12. As set forth below, the Defendants engaged in civil conspiracy in which they misappropriated Zeeto's trade secrets through a fraud-induced contract, breached that contract, and have begun competing directly with Zeeto using Zeeto's own trade secrets and copyrighted works against Zeeto.

COMPLAINT

3

Case No. _____-cv-_____

## PARTIES AND JURISDICTION

13.    This is an action for trade secret misappropriation arising under Title 18 of the United States Code and for violation of the Digital Millenium Copyright Act under Title 17 of the United States Code. This action also arises under California's Uniform Trade Secrets Act at Cal. Civ. Code §§3426 et seq.; Cal. Civ. Code §1709; Cal Civ Code §§1565 et seq.; Cal. Penal Code §502; and California's unfair competition statute at Cal. Bus. and Prof. Code §17200 et seq. Other causes of action are also set forth below.

14.    This Court has jurisdiction over all the parties in this action and over the subject matter in issue based on 28 U.S.C. §1331, 28 U.S.C. §1338(a) and (b), and 17 U.S.C. §1203(a).

15.    This Court further has jurisdiction over all the parties and over the subject matter in issue under 28 U.S.C. §1367.

16.    ZeetoGroup, LLC is organized under Delaware law. Before July 22, 2024, Zeeto had a principal place of business at 925 B Street, San Diego, California 92101.  On July 22, 2024, Zeeto filed a statement of information with the California Secretary of State, in which Zeeto changed its principal place of business to 3131 West Bolt Street, Fort Worth, TX  76110.

17.    Pushnami LLC is organized under Delaware law, having a principal place of business at 6600 N. Lamar Blvd., Austin, TX  78752.  Pushnami's registered agent for service of process in Texas is Emerson Smith, having an address of 6600 N. Lamar Blvd., Austin, TX  78752.  Pushnami's registered agent for service of process in Delaware is A Registered Agent, Inc., 8 The Green, Suite A, Dover, DE 19901.

18.    Digipropz, LLC is organized under Delaware law, having a principal place of business at 6600 N. Lamar Blvd., Austin, TX  78752.  Digipropz's registered agent for service of process in Texas is Mod B Solutions, LLC, 2900 W. Anderson Ln. C200-314, Austin, TX  78757.  Digipropz's registered agent for service of process in Delaware is A Registered Agent, Inc., 8 The Green, Suite A, Dover, DE 19901.

COMPLAINT

4

Case No. _____-cv-_____

19.    Emerson Smith is an individual.  Upon information and belief, ESmith works and resides in Austin, Texas.

20.    Claire Smith is an individual.  Upon information and belief, CSmith resides in Austin, Texas.

21.    Joshua Briggs is an individual.  Upon information and belief, Briggs works and resides in Texas.

22.    Gavin Gayden is an individual.  Upon information and belief, Gayden works and resides in Texas.

23.    DOES 1-10 are unknown individuals who have engaged in the improper acts described below in concert with and/or in support of the named defendants.

24.    In January 2022, on behalf of Digipropz, Gavin Gayden signed a contract titled Zeeto Publisher Terms of Service (the "Agreement") with Zeeto, on behalf of Digipropz.  Upon information and belief, as set forth further below, Digipropz was acting as an alter ego of Pushnami, ESmith, CSmith, Briggs, Gayden, and Does 1-10 for commission of the improper acts alleged herein.

25.    The Agreement stated, "The parties submit to the exclusive jurisdiction of the federal or state courts in San Diego, California, and you consent to the personal jurisdiction in those courts."  The Agreement further states, "As used in this agreement, 'you' or 'Publisher' means the individual or entity using the Zeeto Services and/or any individual, entity, successor entity, agency or network acting on your behalf.

26.    Each of Pushnami, Digipropz, ESmith, CSmith, Briggs, Gayden, and Does 1-10 fall within the definition of 'you' within the Agreement.

27.    Pushnami used the Zeeto Services and, therefore, consented to personal jurisdiction in this district.

28.    Digipropz signed the Agreement and, therefore, consented to personal jurisdiction in this district.

COMPLAINT                                              Case No. _____-cv-_____

29.     ESmith used the Zeeto Services and, therefore, consented to personal jurisdiction in this district.

30.     Because Digipropz is an alter ego of CSmith, CSmith consented to personal jurisdiction in this district by the actions of Digipropz.

31.     Briggs used the Zeeto Services and, therefore, consented to personal jurisdiction in this district.

32.     Gayden signed the Agreement for Digipropz and, therefore, consented to personal jurisdiction in this district.

33.     Upon information and belief, DOES 1-10 used the Zeeto Services and, therefore, consented to personal jurisdiction in this district.

## VENUE

34.     Upon information and belief, venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this district.

35.     Venue is also proper because all defendants consented to personal jurisdiction in this district.

## THE AGREEMENT

36.     In 2022, Zeeto approached Pushnami, a company led by ESmith, with a proposal for a commercial partnership.

37.     At that time, Pushnami was not engaged in the "path" business and had developed no technology or intellectual property to engage in that business.

38.     At that time, the monetization framework developed by Zeeto was unfamiliar to Pushnami and ESmith, and they had not developed any expertise in the "path" business.

COMPLAINT                                    6                    Case No. _____-cv-_____

39.     At that time, Pushnami possessed and operated a push notification platform.  This was technology that enabled Internet browser software to push messages to users.  Based upon this technology, Pushnami controlled a significant amount of traffic that Pushnami could direct to various monetization platforms, including potentially Zeeto's own Tibrio property or properties that could be built by Zeeto specifically for Pushnami under a contract.

40.     At the time that Zeeto approached Pushnami, Zeeto possessed technology, expertise, and infrastructure to build and monetize high-performance "paths."  At the same time, Pushnami possessed traffic, but no comparable monetization system.

41.     Zeeto and Pushnami decided to enter an agreement, whereby Zeeto would handle all aspects of path development using Zeeto's proprietary platform, intellectual property (including trade secrets), and more than a decade of institutional knowledge.  In return for this, Pushnami would direct its traffic to these paths and revenue would be shared.

42.     The Agreement was signed by Zeeto on January 25, 2022.

43.     The Agreement was signed by Pushnami's alter ego on January 26, 2022. Specifically, Pushnami's VP of Advertising, Gavin Gayden, signed under the name "Digipropz LLC."

44.     In January 2022, Zeeto believed that the parties to the Agreement intended the Agreement to form a long-term, mutually-beneficial relationship.

45.     It has become apparent since January 2022, that Pushnami did not enter into the Agreement in good faith, but had improper purposes for signing the Agreement.

46.     The Agreement clearly defined the parties' respective obligations and contained strict limitations on the use of Zeeto's technology and intellectual property.

47.     The Agreement defines the parties to the Agreement, stating, "As used in this agreement, 'you' or 'Publisher' means the individual or entity using the Zeeto Services and/or any individual, entity, successor entity, agency or network acting on your

COMPLAINT                                              Case No. _____-cv-_____

behalf." The Agreement defined the "Services" as "Zeeto's monetization and advertising services."

48.     As set forth in the foregoing paragraph, the Agreement applied directly to every defendant who used the Zeeto Services and every defendant "acting on … behalf" of the defendants who used the Zeeto Services.

49.     The Agreement strictly limited the usage of Zeeto's services, stating, "You may only use the Services as expressly permitted by this Agreement and any applicable laws."

50.     The Agreement contained a strict limitation policy regarding use, stating, "You agree to not hide, cloak or obfuscate how you use Zeeto Technology, or modify, alter, reverse engineer, disassemble, decompile, decode, or create derivative works of any part of the Zeeto Platform." The Agreement defined "Zeeto Technology" as "Zeeto's software." The Agreement defined "Zeeto Platform" as "comprised of the Services, the Zeeto Technology…, and Zeeto's online publisher portal."

51.     As set forth further below, the defendants hid, cloaked, and obfuscated how they used the Zeeto Technology in violation of the Agreement.

52.     As set forth further below, the defendants reverse engineered and created derivative works of parts of the Zeeto Platform in violation of the Agreement.

53.     The Agreement provided that "Zeeto will pay you based on a revenue share of the revenues generated on behalf of the Publisher by the Zeeto Technology."

54.     The Agreement further provided that "Zeeto will not pay Publisher in the case of (as Zeeto may determine in its sole discretion): … fraud, … violation of this Agreement, …"

55.     The Agreement further provided Zeeto the right to withhold payments and charge-back Defendants' account due to breach, stating, "Zeeto may also terminate this Agreement at any time and for any reason. If we terminate the Agreement due to your breach of the Agreement we may withhold payments and/or charge back your account.

COMPLAINT                                                    Case No. _____-cv-_____

… Upon termination of this Agreement, all licenses granted through this Agreement will immediately terminate."

56.     The Agreement limited Defendants' rights in Zeeto's intellectual property, stating, "Other than expressly stated in this Agreement, neither party will acquire any right, title or interest in any intellectual property rights belonging to the other party or the other party's licensors."

57.     The Agreement further limited Defendants' use of Zeeto's Platform, stating, "You may not copy, modify, distribute, sell, license, lease, or create derivative works of any part of the Zeeto Platform or other included software, nor may you reverse engineer or attempt to extract the source code of that software, unless laws prohibit those restrictions or you have our written permission."

58.     As set forth further below, defendants copied, modified, distributed, and created derivative works of parts of the Zeeto Platform without written permission in violation of the Agreement.

59.     As set forth further below, defendants reverse engineered parts of the Zeeto software without written permission in violation of the Agreement.

60.     The Agreement contained strict confidentiality requirements to protect Zeeto's trade secrets, stating, "You agree not to disclose Zeeto Confidential Information without our prior written consent. 'Zeeto Confidential Information' includes: (a) all Zeeto software, technology, data and information relating to the Services; (b) if applicable, the existence of, and information about, beta or trial features in a Service; and (c) any other information made available by Zeeto that is marked confidential or any other information that would normally be considered confidential under the circumstances presented."

61.     In the Agreement, Defendants made representations and warranties that were false, by agreeing that, "You represent and warrant that … your use of the Services and the Zeeto Technology will be in accordance with all applicable law;…"

9

COMPLAINT                                          Case No. _____-cv-_____

62.     As set forth further below, this representation and warranty by Defendants was false and was falsely made to induce Zeeto to enter the contract.

63.     The terms, conditions, requirements, representations, and warranties set forth in the Agreement were material and critical.  Zeeto would not have entered into the Agreement without assurances that Defendants would not steal its trade secrets, copy its technology, reverse-engineer, create derivative works, or undertake other forbidden acts.

### AFTER SIGNING THE AGREEMENT

64.     After signing the Agreement, Zeeto and Pushnami began working together to develop a joint path business.

65.     Multiple Pushnami employees, including but not limited to ESmith, Briggs, Gayden, Arbaz Khan, Cooper Jones, Kacey Meguin, Rikki Hall, Samantha Couch, Alexus Carter, and Nalin Kapoor used the Zeeto platform and many had logins to access Zeeto's trade secret information.  These employees used Pushnami email addresses ending with "@pushnami.com" with their login credentials.

66.     While the Agreement was nominally signed on behalf of Digipropz, it is apparent that Digipropz is merely an alter ego for Pushnami, ESmith, and CSmith. Pushnami, ESmith, and CSmith obtained significant benefits from the Agreement.

### THE FIRST NINE MONTHS: JANUARY – SEPTEMBER 2022

67.     For approximately the first nine months following execution of the Agreement, both Zeeto and Pushnami invested significant effort into developing a "path" business for Pushnami that would use Zeeto's technology and trade secrets in concert with Pushnami's traffic.

68.     During the first nine months, revenue remained extremely low while Zeeto undertook extensive work to build and optimize "paths" for Pushnami.

69.     During the first nine months, Zeeto invested substantial amounts of money and effort into building "paths" for Pushnami with no guarantee of future revenue.

COMPLAINT                                                    Case No. _____-cv-_____

Zeeto did not bill any fees to develop "paths" for Pushnami. Rather, the Agreement was structured so that Zeeto would perform extensive advance work and help Pushnami develop a new line of business; in exchange, Zeeto would receive long term revenue sharing as consideration.

70.     Working under the confidentiality requirements of the Agreement, Zeeto taught Pushnami multiple trade secrets, including providing information about how to run media to paths, how to optimize paths, which advertisers work well, and numerous types of related information.

71.     Zeeto employee Shay Baumgart conducted weekly or twice-weekly calls with Pushnami to educate Pushnami regarding the trade secret information necessary to operate a revenue-generating "path" successfully.  This information was provided under the confidentiality provision of the Agreement.

72.     Zeeto trained Pushnami regarding how to operate performance "paths", how to use the Zeeto Advertising Network ("ZAN") platform, how to buy media efficiently, how to evaluate media quality, and which traffic source / product combinations were most likely to succeed.

73.     Zeeto and Pushnami collaborated extensively to ensure that Pushnami knew enough of Zeeto's trade secrets to make the joint business under the Agreement successful.

**MONTH TEN AND LATER: OCTOBER 2022 AND LATER**

74.     By the tenth month following execution of the Agreement, revenue for the joint Zeeto-Pushnami "path" business began to scale significantly.

75.     By mid-2023, revenue for the joint Zeeto-Pushnami "path" business was millions of dollars per month.

76.     By 2024, revenue for the joint Zeeto-Pushnami "path" business was tens of millions of dollars annually.

COMPLAINT                                          Case No. _____-cv-_____

77.     By 2024, Defendants had possession of extensive trade secret information from Zeeto regarding the knowledge required to operate a path-based system. Pushnami's employees had been trained by Zeeto for two years under the confidentiality requirements of the Agreement.

78.     Upon information and belief, Defendants decided in 2024 or earlier, to reverse-engineer Zeeto's system and/or create derivate works based on portions of Zeeto's system.

79.     Defendants knew that Zeeto was earning millions of dollars per year from the joint Zeeto-Pushnami "path" revenue.  Upon information and belief, Defendants decided to capture the Zeeto revenue rather than continuing to let Zeeto take their agreed upon share of the revenue.

80.     Upon information and belief, Defendants began building a Pushnami system to operate "path" businesses without Zeeto's knowledge, while using derivative and reverse-engineered Zeeto technology along with Zeeto's trade secrets.

81.     Zeeto does not know the exact day or month when Defendants began building the Pushnami system to operate "path" businesses, but these facts will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

82.     Based upon internet archives, upon information and belief, Pushnami built the website that was meant to host Pushnami's competing "path" business and made it available to users on or before November 1, 2024.

**THE ORAL AGREEMENT AND NOTIFY.AI**

83.     While working together under the Agreement, Zeeto and Pushnami reached a further oral contract (the "Oral Agreement").

84.     The Oral Agreement was spurred by two circumstances: (1) Pushnami was interested in using technology providers other than Zeeto for a "path" monetization business; and (2) Zeeto was interested in working with other "push" companies to

COMPLAINT                                              Case No. _____-cv-_____

develop further monetization opportunities using a strategy that was similar to the strategy that Zeeto used with Pushnami, wherein Zeeto would approach other "push" providers that compete with Pushnami in that space and work with them..

85.    Pushnami and Zeeto agreed that (1) Pushnami would not use any technology providers outside of Zeeto for a "path" monetization, including not developing its own technology for this purpose and, in exchange, (2) Pushnami would provide Zeeto with a list of "push" companies that Zeeto could not work with.  The parties agreed orally to these terms.

86.    Pushnami provided Zeeto a list of "push" companies with which Zeeto could not work.  Notify.ai was on this list.

87.    In or around December 2023, Zeeto was contacted by a company named Sonder Data Group ("SDG").  SDG desired to start a "path" business.

88.    Zeeto signed a contract with SDG to develop a "path" business for SDG.

89.    Zeeto performed significant work to build a "path" for SDG.

90.    The SDG "path" began generating meaningful revenue for both SDG and Zeeto by March 2024.

91.    The SDG "path" revenue was growing at a faster rate than Pushnami's "path" revenue.

92.    In or about March 2024, Zeeto learned that SDG was owned and operated by Notify.ai.

93.    Upon learning that SDG was owned and operated by Notify.ai, Zeeto informed Pushnami of the SDG contract and what Zeeto has learned about SDG's relation with Notify.ai.  Upon being informed of this, Pushnami insisted that Zeeto stop working with SDG based upon the Oral Contract.

94.    Upon information and belief, based on information learned in 2025, Pushnami had already breached the Oral Contract with Zeeto before insisting that Zeeto honor the Oral Contract by stopping Zeeto's work with SDG.  Upon information and

COMPLAINT                                                    Case No. _____-cv-_____

1  belief, Pushnami fraudulently concealed its breach of the Oral Contract by hiding

2  Pushnami's work on a competing technology platform and trade secret misappropriation

3  prior to insisting that Zeeto stop its work with SDG.

4       95.    Zeeto lost significant revenue by ceasing its work with SDG.

5  <center>**DEFENDANTS' COPYING**</center>

6       96.    Upon information and belief, ESmith directed Pushnami employees to

7  copy and reverse-engineer Zeeto's technology platform, and to create a derivative

8  technology platform.

9       97.    Upon information and belief, ESmith referred to Pushnami's copied,

10  reverse-engineered, derivative technology platform as "Pivot."

11       98.    Upon information and belief, ESmith directed certain Pushnami employees

12  to conceal and withhold information about Pivot from other Pushnami employees.

13       99.    Upon information and belief, ESmith directed all Pushnami employees

14  with knowledge of the development of Pivot to conceal and withhold information about

15  Pivot, including even the fact that Pivot was being developed, from Zeeto.

16       100.    Upon information and belief, ESmith directed all Pushnami employees

17  with knowledge of the development of Pivot to conceal and withhold information about

18  Pivot, including even the fact that Pivot was being developed, from all persons outside

19  of Pushnami.

20       101.    Upon information and belief, ESmith directed all Pushnami employees

21  with knowledge of the development of Pivot to make false statements to conceal and

22  withhold information about Pivot, if the subject matter arise in communications with

23  Zeeto.

24       102.    Defendants engaged in copying of many aspects of Zeeto's "path" system

25  for purposes of creating Pivot.

26       103.    Defendants copied portions of Zeeto's source code.

27       104.    Defendants copied images used by Zeeto.

28

<center>14</center>

105.    Defendants copied elements of Zeeto's system that Zeeto's trade secret test results had shown to be essential for performance.  The design, structure, and optimization of the "path" within a "path" system are critical to the profitability of the system.  Zeeto has invested thousands of hours over many years to build, refine, and optimize paths, including through the collection of extensive trade secret data regarding the impact of various changes.

106.    In copying aspects of Zeeto's system, Defendants avoided altering system features that Zeeto's trade secret test results had shown would negatively impact results if offered.

107.    Defendants' actions in selecting which items to copy demonstrates that Defendants intentionally and willfully misappropriated Zeeto's trade secrets for use in development of Pivot.  While the final interface of Zeeto's "path" is viewable by a user, the process that produces the path is secret.  The process, including what to test, how to test, and how to interpret the data are trade secrets.  Under the Agreement, Zeeto shared a substantial amount of testing methodology and data with Defendants.

108.    Defendants' copying of Zeeto's "path" interfaces demonstrates large scale misappropriation based on Zeeto's trade secrets.  For example, in the following images, the screenshot on the left is from "PrizeStash" (an interface developed by Zeeto under the Agreement with Pushnami), while the screenshot on the right is from "MyPrizeSearch" (a copied, reverse-engineered, and derivative interface launched by Defendants using the Pivot system):

COMPLAINT                                          Case No. _____-cv-_____



109.    The above images demonstrated that Defendants copied many aspects of Zeeto's interface that Zeeto rigorously tested and that Zeeto's trade secret testing data showed to perform better than other options.

110.    Defendants did not even change the image file name when they copied Zeeto's copyrighted image. Zeeto named the image "ps_wlmt2krewards_1000" when Zeeto created the image in March 2024. The below screenshot of Defendants' source code shows that Defendants retained the identical image name for the copied image:

`<img src="https://try4.my-prize-search.com/image/ps_wlmt2krewards_1000.png" alt="Offer image" loading="lazy" class="layout-offer-image">`

111.  Even Zeeto's image naming scheme is a proprietary naming scheme used to systematically track split-tested image assets within Zeeto's trade secret testing system and for development of Zeeto's trade secret testing data.  There is no reason for Defendants to use this naming system except to further Defendants' misappropriation of Zeeto's trade secrets.

112.  Other images screenshot images demonstrate that Defendants copied Zeeto's registration flow.  For example, in the following images, the screenshots on the top are from "PrizeStash" (an interface developed by Zeeto under the Agreement with Pushnami), while the screenshots on the bottom are from "MyPrizeSearch" (a copied, reverse-engineered, and derivative interface launched by Defendants using the Pivot system):

COMPLAINT                                      Case No. _____-cv-_____



113.    A more extensive set of screenshot images demonstrate that Defendants copied more extensive portions of the "path" that Zeeto developed.  For example, in the following images, the screenshots on the top two rows are from "PrizeStash" (an interface developed by Zeeto under the Agreement with Pushnami), while the screenshots on the bottom three rows are from "MyPrizeSearch" (a copied, reverse-engineered, and derivative interface launched by Defendants using the Pivot system):

COMPLAINT                                                    Case No. _____-cv-_____



Date: Aug 6, 2025

114.   The above screenshots demonstrate that Defendants' Pivot system employs a virtually identical flow to Zeeto's system.  This demonstrates Defendants' copying, derivation, and reverse-engineering.  This further demonstrates Defendants' use of Zeeto's trade secret testing data that indicates specific patterns and wording that is more and less effective in such interfaces.

115.   Defendants' Pivot system further uses a survey component in its paths, as does Zeeto's system.  Defendants' Pivot system is copied, derived, and reverse-engineered from Zeeto's system.  Defendants used Zeeto's trade secret testing data that indicates specific patterns and wording that is more and less effective in survey components.

116.   Defendants' survey questions reflect a pattern of copying Zeeto's survey questions.  Defendants' contextual text patterns around survey questions reflect a pattern of copying Zeeto's contextual text patterns.  Both survey questions and contextual text are based upon Zeeto's trade secret testing data; Defendants' misappropriated Zeeto's trade secret testing data in Defendants' copying, derivation, and reverse-engineering of Zeetos' survey questions and contextual text patterns.

117.   Over many years, Zeeto has tested hundreds of sweepstakes and sample offers to identify those that result in the highest levels of profitability.  The data resulting from such tests is costly in view of the amount of less profitable testing that must be done to identify the more highly profitable offerings.  This data is a type of trade secret of Zeeto.  Under the Agreement, Zeeto provided such information to Defendants.

118.   Defendants' Pivot employs a sweepstakes game that is copied, derived, and reverse-engineered from Zeeto's system, demonstrating Defendants' misappropriation of Zeeto's trade secret testing data regarding the effectiveness or ineffectiveness of various elements in the sweepstakes game.  Defendants copied the sweepstakes game logic by directly copying and using Zeeto's source code in Defendant's Pivot.  Defendants copied Zeeto's CSS animations, card flip logic, class definitions, code

COMPLAINT                                              Case No. _____-cv-_____

structure and syntax, and images.  For example, as the following screenshots demonstrate, Defendants copied Zeeto's copyrighted "Better luck next time" image that was created by Zeeto in April 2023.  Zeeto's image named "card-game-lose.png" is shown below on the left with various data, while Defendants' "card-game-lose.png" is shown below on the right:



119.    Upon information and belief, discovery in this matter will reveal significant additional copying, derivation, and reverse-engineering by Defendants of Zeeto's systems and technology.

**DEFENDANTS' SHIFTING OF TRAFFIC AWAY FROM ZEETO**

120.    Upon completing the Pivot system, Defendants began shifting traffic and revenue away from Zeeto's system and onto the Pivot system.

121.    The revenue generated under the Agreement peaked in January 2024 and began decreasing thereafter.

COMPLAINT                                                    Case No. _____-cv-_____

122.    In November 2024, revenue under the Agreement decreased approximately 15% over revenue in the previous month.  Upon information and belief, Defendants activated the Pivot system in November 2024 or earlier.

123.    By February 2025, revenue under the Agreement decreased to less than 50% of the revenue in October 2024.

124.    By May 2025, revenue under the Agreement was less than 30% of the revenue in October 2024.

125.    In June 2025, revenue under the Agreement was less than 5% of the revenue in October 2024.

### ZEETO'S DISCOVERY OF DEFENDANTS' BREACH

126.    In July 2025, Defendants informed Zeeto that Defendants had launched a system to compete with Zeeto.  ESmith admitted to Zeeto during a phone conversation with a Zeeto employee that Pushnami had deployed a competing platform and was diverting its traffic from Zeeto's platform to Pushnami's platform.

127.    Defendants' breach of the Agreement, trade secret misappropriations and other malfeasance has already had a severe impact on Zeeto's business.  To manage the significant reduction in revenue from the Agreement, Zeeto has already been forced to reduce the size of its workforce and undertake other reductions in operating expenses.

128.    In late 2024, Zeeto learned of credible rumors that Pushnami was developing a "path" platform and system.  Zeeto directly asked Pushnami about the truth of such rumors.  Pushnami's employee falsely and fraudulently denied that Pushnami was developing a "path" platform and system.

129.    For a period of at least six to nine months, Defendants and Pushnami employees, including Defendant Briggs, continued falsely and fraudulently deceiving Zeeto about Pushnami's development of a "path" platform and system through at least as late as June 2025.  Upon information and belief, Defendants and Pushnami employees had been falsely and fraudulently deceiving Zeeto about this for at least one year.

COMPLAINT                                          Case No. _____-cv-_____

## DEFENDANTS' WILLFUL MISAPPROPRIATION

130.    Defendants undertook the aforementioned false and fraudulent deception for purposes of furthering trade secret misappropriation, breach of the Agreement, and other malfeasance.

131.    Upon information and belief, Defendants knew that if Zeeto learned of Defendants' Pivot system, Zeeto would have terminated the Agreement, terminated Defendants' access to Zeeto's trade secrets, and initiated legal action.

132.    Maintaining access to Zeeto's trade secrets was critical to Defendants' continuing efforts to copy, derive, and reverse-engineer Zeeto's systems.  Defendants were continuing to send small amounts of traffic to Zeeto's systems until early July 2025. Thus, Defendants were able to continue to deceive Zeeto and extract further trade secret information from Zeeto while the traffic under the Agreement continued.

133.    During the period between late 2024 and July 2025, Defendants continued requesting many trade secrets from Zeeto's employees, information that Zeeto supplied under the Agreement but that Zeeto would have refused to supply if Zeeto had obtained knowledge that Defendants were building and deploying the competing Pivot system.

134.    If Zeeto had discovered Defendants' Pivot system and/or trade secret misappropriation, such discovery would have harmed Defendants' ability to steal the entirety of the business that was operating under the Agreement.

## DEFENDANTS' TARGETING OF ZEETO TRAFFIC SOURCES

135.    Defendants directly solicited Zeeto's traffic sources to shift revenue from Zeeto's system to Defendants' Pivot.  Defendants' knowledge of Zeeto's traffic sources was obtained through misappropriation of Zeeto's trade secrets.

136.    Under the Agreement, Zeeto provided trade secret information to Defendants regarding manners and methods of acquiring, managing, and optimizing traffic.  Defendants misappropriated this information to attempt to interfere with Zeeto's traffic sources and misappropriate those traffic sources for Defendants' benefit.

COMPLAINT                                    Case No. _____-cv-_____

137.   In a "path" monetization system, an objective is to acquire traffic at lower cost than the revenue generated by the traffic.  Profitability on media spending is essential.  Margin opportunities are created through secondary channels.  Under the Agreement, Defendants obtained Zeeto's trade secret information regarding these matters.  Zeeto trained Defendants regarding which sources perform best, how to identify high-quality and low-quality traffic, how to optimize bids, and cost-per-acquisition targets.  Zeeto's trade secrets include secret infrastructure to measure traffic quality.  Under the Agreement, Zeeto shared these trade secrets with Defendants.  Defendants misappropriated these trade secrets to compete with Zeeto.

138.   Defendants' interference with Zeeto's traffic sources caused and continues to cause direct financial harm to Zeeto.

## DEFENDANTS' TARGETING OF ZEETO ADVERTISERS

139.   Defendants copying of Zeeto's survey questions further indicates that Defendants misappropriated Zeeto's trade secret advertiser information to compete directly with Zeeto for the same advertisers.  Various survey questions are only sent to users when working with an advertiser whose targeting parameters require the associated data.  Defendants misappropriated Zeeto's trade secret advertiser information, including advertiser identification and survey question / advertiser relationships to compete directly with Zeeto for the same advertisers.

140.   Zeeto possesses additional written evidence that Defendants directly solicited Zeeto's advertisers to shift revenue from Zeeto's system to Defendants' Pivot.  Defendants' knowledge of Zeeto's advertisers was obtained through misappropriation of Zeeto's trade secrets.

141.   Using Zeeto's trade secret information, Defendants determined which advertisers performed best to prioritize such advertisers on Defendants' Pivot system.

COMPLAINT                                        Case No. _____-cv-_____

142.    Using Zeeto's trade secret information, Defendants built relationships with Zeeto's advertisers and launched advertising campaigns under the Agreement, as part of a plan to transition Zeeto's advertisers to Defendants' Pivot system.

143.    Using Zeeto's trade secret information, including performance metrics, impressions, click-through rates, and conversion data, Defendants' determined which advertising worked best to pursue such advertising for Defendants' Pivot system.

144.    Upon information and belief, Defendants misappropriated a trade secret list of Zeeto's advertisers that Defendants are now using to solicit revenue from Zeeto's advertisers.

145.    Absent misappropriation of Zeeto's trade secret data, Defendants would have faced a more difficult and expensive process to develop advertising because Defendants would have had to determine without any data, which advertisers to prioritize, the order in which to present offers, how to allocate advertising inventory, etc. Defendants avoided this difficulty and expense by misappropriating Zeeto's trade secrets.

146.    Defendants' interference with Zeeto's advertisers caused and continues to cause direct financial harm to Zeeto.

## DEFENDANTS' USAGE OF COPYRIGHTED IMAGES AND REMOVAL AND FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION

147.    Zeeto developed numerous copyrighted images for use in "path" businesses.

148.    Zeeto's copyrighted images are developed internally and all copyright rights are owned by Zeeto.

149.    Zeeto displays subsets of these copyrighted images when presenting "paths" to users of Zeeto's "path" system.

COMPLAINT                                                    Case No. _____-cv-_____

150.   When Zeeto displays a copyrighted image to a user of Zeeto's "path" system, Zeeto displays copyright management and ownership information, such as "©2025 PrizeStash.com."

151.   The following image is one example of Zeeto's display of copyright management and ownership information:

COMPLAINT                                              Case No. _____-cv-_____



COMPLAINT

Case No. _____-cv-_____

152.    Without authority of Zeeto or the law, Defendants knowingly copied numerous copyrighted images owned by Zeeto.

153.    Without authority of Zeeto or the law, Defendants knowingly removed Zeeto's copyright management and ownership information by copying only the image files without the accompanying information.

154.    Without authority of Zeeto or the law, Defendants knowingly distributed copyright management information knowing that the copyright management information has been removed and altered without authority of Zeeto or the law.

155.    Without authority of Zeeto or the law, Defendants have distributed copies of Zeeto's copyrighted works knowing that the copyright management information has been removed and altered.

156.    When Defendants display Zeeto's copyrighted images to a user of Defendants' "path" system, Defendants display false copyright management and ownership information, such as "©2025 My Prize Search."

157.    The following image is one example of Defendants' display of false copyright management and ownership information:

COMPLAINT                                                    Case No. _____-cv-_____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT                                                                Case No. _____-cv-_____

158.    Defendants have copied and displayed numerous copyrighted works owned by Zeeto, including, but not limited to, images named ps_walmart_1000; ps_cstc_500; ps_dtree_500; ps_bk_50; ps_walmart_500; ps_amzbx_100; ps_paypal_1000; ps_amzn_1000; ps_smsngflipphone_1000; fcn_cash; ps_friedckn_50; ps_cashapp_1000; and fcn_envelope.

159.    Upon information and belief, Defendants knowingly removed Zeeto's copyright management information from every Zeeto work that was copied.

160.    Upon information and belief, Defendants knowingly distributed the copyrighted works copied from Zeeto with removed and/or false copyright management information every time Defendants distributed the copyrighted works to a user.

161.    Zeeto filed for copyright registrations of a number of Zeeto's copyrighted images.

162.    The United States Copyright Office has not yet issued copyright registration certificates based on Zeeto's filings.

163.    Upon receipt of the copyright registration certificates, Zeeto expects to amend this complaint to state a further cause of action for copyright infringement under the United States Code.

## DEFENDANTS' MISAPPROPRIATION OF PRODUCT SELECTION STRATEGY

164.    Defendants' misappropriated Zeeto's trade secrets regarding product selection strategy.  Over many years, Zeeto has tested hundreds of sample offers to identify those with the highest conversion rates.  Such tests involve substantial cost.  The results of such tests are trade secrets of Zeeto.

165.    Under the Agreement, Zeeto shared curated and performance-validated trade secret information about top-performing offers with Defendants.  Defendants

COMPLAINT                                          Case No. _____-cv-_____

misappropriated these trade secrets to use the exact same offers in Defendants' Pivot system.

166. Defendants' Pivot offer configuration aligns exactly with Zeeto's most profitable subset of offers that was shared with Defendants under the Agreement.

**DEFENDANTS' MISAPPROPRIATION OF SPLIT TESTING RESULTS**

167. Zeeto optimizes its "path" systems by tailoring advertising campaigns to specific audiences and traffic sources based on continuous split testing. Each campaign, layout, and product configuration is tested and refined. The results of such split testing are trade secrets of Zeeto.

168. Under the Agreement, Zeeto shared these trade secret results with Defendants. Defendants' Pivot system mirrors Zeeto's high-performing elements exactly and without deviation. Defendants' achieved this selective replication by misappropriation of Zeeto's trade secrets. Defendants copied only the proven optimal pieces, avoided costly testing, and calibrated Defendants' design through misappropriation of Zeeto's trade secrets.

169. Pursuant to Fed. R. Civ. P. 11(b)(3), the factual contentions in paragraph 1 will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

**FIRST CLAIM FOR RELIEF**

(Federal Trade Secret Misappropriation)
(Against Pushnami, Digipropz, ESmith, CSmith, Briggs, and Does 1-10)

170. Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

171. This claim arises under Title 18 of the United States Code, including §§1831, 1832, 1836, etc.

COMPLAINT                                    Case No. _____-cv-_____

172.   As set forth above, Zeeto possesses secret information.

173.   Zeeto protects it secret information.

174.   Zeeto employees are required to keep Zeeto's information secret.

175.   Zeeto reasonably protects its secret information through technical measures including at least password protection prior to accessing the secret information that is stored electronically.

176.   Zeeto reasonably protects its secret information by limiting information access to appropriate categories of employees.  For example, except where cross-access is reasonable for work-related purposes, secret computer source code is limited to employees with source code development or management responsibilities, secret financial information is limited to employees with finance or management responsibilities, and secret marketing information is limited to employees with marketing or management responsibilities.

177.   Zeeto reasonably protects its secret information that is shared with business partners.  For example, Zeeto includes confidentiality provisions in its agreements, including the confidentiality clause in the Agreement that is recited above. As another example, Zeeto requires business partners to have login credentials to access Zeeto's confidential electronic information.

178.   Zeeto provided Defendants with login credentials that were required for gaining access to Zeeto's secret electronic information.

179.   Zeeto's offices have had locked doors to prevent access by unauthorized

COMPLAINT

persons.

180.    Zeeto's employees' computers are password protected to prevent access by unauthorized persons.

181.    Zeeto employs reasonable cybersecurity measures to prevent unauthorized access to Zeeto's company computing systems.

182.    Zeeto requires its employees to receive annual computer security training for purposes of protecting Zeeto's trade secrets.

183.    All of Zeeto's trade secret data is password protected and encrypted on Zeeto's servers to protect secrecy.

184.    Zeeto further employs industry-standard access controls for its secret data, two-factor authentication to prevent unauthorized access, and other security measures that all protect secrecy of Zeeto's trade secrets.

185.    Zeeto's secret information derives its value from secrecy. Zeeto is able to optimize and increase its revenue through secret knowledge of Zeeto's secret information. Without such secret knowledge, if Zeeto's information because known by others, other entities and persons such as Defendants would be able to monetize Zeeto's secret information without paying compensation to Zeeto.

186.    For example, by misappropriating Zeeto's trade secrets, Defendants have been able to continue monetizing Zeeto's secret information through Defendants' derivative, reverse-engineering technical systems without paying Zeeto any portion of the revenues generated through such systems.

COMPLAINT                                              Case No. _____-cv-_____

187.   As set forth above, Zeeto has invested approximately 12 years, hundreds-of-thousands of worker-hours, and millions of dollars in developing and refining Zeeto's secret information.  Competitors would face substantial difficulty and expense in attempting to replicate Zeeto's secret information.

188.   Zeeto's secret information is related to products and services used in interstate and/or foreign commerce.  Zeeto's products and services are used with Internet advertising to persons in most or all states and in some foreign countries. Zeeto's advertisers who pay for Zeeto's services are located in numerous states.  Zeeto's products and services transmit data related to such advertisers to numerous states And receive data related to such advertisers from numerous states.  Zeeto receives payment from advertisers in many states for the use of Zeeto's products and services.

189.   Defendants misappropriated, used, and continue to use Zeeto's secret information without permission or license from Zeeto.

190.   Defendants entered into a contract, the Agreement, with Zeeto that limited the purposes for which Defendants could use Zeeto's secret information.  Defendants breached the Agreement by using Zeeto's secret information for purposes that were not permitted.  For example, as set forth above, Defendants created products and services to compete with Zeeto using Zeeto's secret information in violation of the terms under which Defendants were permitted to use Zeeto's secret information.

191.   Defendants' misappropriation occurred after the provisions of 18 U.S.C. §§1831 et seq. were enacted and in force.  Specifically, Defendants' misappropriation

COMPLAINT                                Case No. _____-cv-_____

occurred after 2021.

192.    Defendants knew or had reason to know that Defendants' acts of misappropriation were improper.  Upon information and belief, Defendants actively concealed Defendants' competing "path" system from Zeeto as the system was being developed and deployed.  Upon information and belief, ESmith instructed Defendants to avoid discussing Defendants' competing "path" system, internally named "Pivot", and to conceal the system from both Zeeto and from other Pushnami employees to avoid the information getting back to Zeeto.  Upon information and belief, Defendants undertook concerted efforts to download vast quantities of reports (i.e., over 10,000 reports) containing Zeeto's secret information for improper use after breaching the Agreement and before Zeeto became aware of the breach.

193.    Additionally, some Defendants actively made false statements to Zeeto to conceal Defendants' misappropriation of Zeeto's secret information.

194.    Defendants engaged in a civil conspiracy to misappropriate Zeeto's trade secrets by reaching an agreement to engage in trade secret misappropriation.  Upon information and belief, each of Defendants were aware that the other Defendants planned to breach the Agreement, construct a derivated and reverse-engineered "path" system, obtain trade secrets verbally through twice-weekly meetings with Zeeto, download large amounts of Zeeto's electronically stored trade secret information, and conceal the trade secret misappropriation and breach of the Agreement from Zeeto.

195.    Zeeto has been damaged in the amount of, at least, millions of dollars by

COMPLAINT                                              Case No. _____-cv-_____

Defendants' misappropriation of Zeeto's trade secrets.

196.    Zeeto has no adequate remedy at law for Defendants' trade secret misappropriation.  The entire damage to Zeeto based on Defendants' trade secret misappropriation cannot be adequately remedied or compensated by monetary damages, such that equitable remedies including injunctive relief is necessary.

197.    Defendants' misappropriation of Zeeto's trade secrets has been through willful and malicious acts.

198.    Defendants acted with a purpose and willingness to commit the acts of trade secret misappropriation.  Defendants' acts were not reasonable and were not taken in good faith.  Defendants acted with intent to cause injury to Zeeto.  Defendants' conduct was despicable and was conducted with a willful and knowing disregard for Zeeto's rights.  Defendants acted with knowing disregard of the probable consequences of their conduct and deliberately failed to avoid those consequences.

199.    Defendants began the business relationship with Zeeto through use of an alter ego company named Digipropz.  Defendants used this alter ego company to enter into the Agreement with Zeeto.  Upon information and belief, Defendants used the alter ego company as an attempt to shield Defendants from liability with foreknowledge that Defendants would attempt to misappropriate Zeeto's trade secrets.

200.    After entering the Agreement, Defendants undertook significant efforts to learn Zeeto's trade secrets, including at least bi-weekly meetings to learn Zeeto's trade secrets and downloading thousands of reports including Zeeto's trade secrets.

COMPLAINT                                                    Case No. _____-cv-_____

Defendants undertook these efforts while secretly breaching the Agreement through using Zeeto's trade secrets to construct a derivative and reverse-engineered "path" system that employed Zeeto's trade secret information.

201.    Certain Defendants made false statements directly to Zeeto to conceal the breach of the Agreement, including the trade secret misappropriation.  Upon information and belief, Defendant ESmith instructed employees of Defendant Pushnami to conceal Defendants' efforts to construct the derivative and reverse-engineered "path" system. Upon information and belief, Defendants' actively and in concert engaged in acts of concealing Defendants' derivative and reverse-engineered "path" system from Zeeto.

202.    Zeeto has suffered and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

203.    Zeeto has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

(California Trade Secret Misappropriation)
(Against Pushnami, Digipropz, ESmith, CSmith, Briggs, and Does 1-10)

204.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

205.    This claim arises under California's Uniform Trade Secrets Acts, e.g., California Civil Code §§3426 et seq.

206.    As set forth above, Zeeto possesses secret information.

207.    Zeeto protects it secret information.

208.    Zeeto employees are required to keep Zeeto's information secret.

209.    Zeeto reasonably protects its secret information through technical measures including at least password protection prior to accessing the secret information that is stored electronically.

210.    Zeeto reasonably protects its secret information by limiting information access to appropriate categories of employees.  For example, except where cross-access is reasonable for work-related purposes, secret computer source code is limited to employees with source code development or management responsibilities, secret financial information is limited to employees with finance or management responsibilities, and secret marketing information is limited to employees with marketing or management responsibilities.

211.    Zeeto reasonably protects its secret information that is shared with business partners.  For example, Zeeto includes confidentiality provisions in its agreements, including the confidentiality clause in the Agreement that is recited above. As another example, Zeeto requires business partners to have login credentials to access Zeeto's confidential electronic information.

212.    Zeeto provided Defendants with login credentials that were required for gaining access to Zeeto's secret electronic information.

213.    Zeeto's offices have had locked doors to prevent access by unauthorized persons.

214.    Zeeto's employees' computers are password protected to prevent access by

COMPLAINT                                        Case No. _____-cv-_____

unauthorized persons.

215.    Zeeto employs reasonable cybersecurity measures to prevent unauthorized access to Zeeto's company computing systems.

216.    Zeeto requires its employees to receive annual computer security training for purposes of protecting Zeeto's trade secrets.

217.    All of Zeeto's trade secret data is password protected and encrypted on Zeeto's servers to protect secrecy.

218.    Zeeto further employs industry-standard access controls for its secret data, two-factor authentication to prevent unauthorized access, and other security measures that all protect secrecy of Zeeto's trade secrets.

219.    Zeeto's secret information derives its value from secrecy.  Zeeto is able to optimize and increase its revenue through secret knowledge of Zeeto's secret information.  Without such secret knowledge, if Zeeto's information because known by others, other entities and persons such as Defendants would be able to monetize Zeeto's secret information without paying compensation to Zeeto.

220.    For example, by misappropriating Zeeto's trade secrets, Defendants have been able to continue monetizing Zeeto's secret information through Defendants' derivative, reverse-engineering technical systems without paying Zeeto any portion of the revenues generated through such systems.

221.    As set forth above, Zeeto has invested approximately 12 years, hundreds-of-thousands of worker-hours, and millions of dollars in developing and refining Zeeto's

COMPLAINT                                                        Case No. _____-cv-_____

secret information.  Competitors would face substantial difficulty and expense in attempting to replicate Zeeto's secret information.

222.   Zeeto's secret information is related to products and services used in interstate and/or foreign commerce.  Zeeto's products and services are used with Internet advertising to persons in most or all states and in some foreign countries. Zeeto's advertisers who pay for Zeeto's services are located in numerous states.  Zeeto's products and services transmit data related to such advertisers to numerous states And receive data related to such advertisers from numerous states.  Zeeto receives payment from advertisers in many states for the use of Zeeto's products and services.

223.   Defendants misappropriated, used, and continue to use Zeeto's secret information without permission or license from Zeeto.

224.   Defendants entered into a contract, the Agreement, with Zeeto that limited the purposes for which Defendants could use Zeeto's secret information.  Defendants breached the Agreement by using Zeeto's secret information for purposes that were not permitted.  For example, as set forth above, Defendants created products and services to compete with Zeeto using Zeeto's secret information in violation of the terms under which Defendants were permitted to use Zeeto's secret information.

225.   Defendants' misappropriation occurred after the provisions of California's Uniform Trade Secrets Acts, e.g., California Civil Code §§3426 et seq., were enacted and in force.  Specifically, Defendants' misappropriation occurred after 2021.

226.   Defendants knew or had reason to know that Defendants' acts of

COMPLAINT                                          Case No. _____-cv-_____

misappropriation were improper.  Upon information and belief, Defendants actively concealed Defendants' competing "path" system from Zeeto as the system was being developed and deployed.  Upon information and belief, ESmith instructed Defendants to avoid discussing Defendants' competing "path" system, internally named "Pivot", and to conceal the system from both Zeeto and from other Pushnami employees to avoid the information getting back to Zeeto.  Upon information and belief, Defendants undertook concerted efforts to download vast quantities of reports (i.e., over 10,000 reports) containing Zeeto's secret information for improper use after breaching the Agreement and before Zeeto became aware of the breach.

227.   Additionally, some Defendants actively made false statements to Zeeto to conceal Defendants' misappropriation of Zeeto's secret information.

228.   Defendants engaged in a civil conspiracy to misappropriate Zeeto's trade secrets by reaching an agreement to engage in trade secret misappropriation.  Upon information and belief, each of Defendants were aware that the other Defendants planned to breach the Agreement, construct a derivated and reverse-engineered "path" system, obtain trade secrets verbally through twice-weekly meetings with Zeeto, download large amounts of Zeeto's electronically stored trade secret information, and conceal the trade secret misappropriation and breach of the Agreement from Zeeto.

229.   Zeeto has been damaged in the amount of, at least, millions of dollars by Defendants' misappropriation of Zeeto's trade secrets.

230.   Zeeto has no adequate remedy at law for Defendants' trade secret

COMPLAINT                                    Case No. _____-cv-_____

misappropriation.  The entire damage to Zeeto based on Defendants' trade secret misappropriation cannot be adequately remedied or compensated by monetary damages, such that equitable remedies including injunctive relief is necessary.

231.    Defendants' misappropriation of Zeeto's trade secrets has been through willful and malicious acts.

232.    Defendants acted with a purpose and willingness to commit the acts of trade secret misappropriation.  Defendants' acts were not reasonable and were not taken in good faith.  Defendants acted with intent to cause injury to Zeeto.  Defendants' conduct was despicable and was conducted with a willful and knowing disregard for Zeeto's rights.  Defendants acted with knowing disregard of the probable consequences of their conduct and deliberately failed to avoid those consequences.

233.    Defendants began the business relationship with Zeeto through use of an alter ego company named Digipropz.  Defendants used this alter ego company to enter into the Agreement with Zeeto.  Upon information and belief, Defendants used the alter ego company as an attempt to shield Defendants from liability with foreknowledge that Defendants would attempt to misappropriate Zeeto's trade secrets.

234.    After entering the Agreement, Defendants undertook significant efforts to learn Zeeto's trade secrets, including at least bi-weekly meetings to learn Zeeto's trade secrets and downloading thousands of reports including Zeeto's trade secrets. Defendants undertook these efforts while secretly breaching the Agreement through using Zeeto's trade secrets to construct a derivative and reverse-engineered "path"

42

COMPLAINT                                    Case No. _____-cv-_____

system that employed Zeeto's trade secret information.

235.    Certain Defendants made false statements directly to Zeeto to conceal the breach of the Agreement, including the trade secret misappropriation.  Upon information and belief, Defendant ESmith instructed employees of Defendant Pushnami to conceal Defendants' efforts to construct the derivative and reverse-engineered "path" system. Upon information and belief, Defendants' actively and in concert engaged in acts of concealing Defendants' derivative and reverse-engineered "path" system from Zeeto.

236.    Zeeto has suffered and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

237.    Zeeto has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**

(Breach of Contract)
(Against Pushnami, Digipropz, ESmith, CSmith, Briggs, Gayden, and Does 1-10)

238.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

239.    This claim arises under the common law and California Civil Code §§3300 et seq.

240.    As set forth above, Defendants entered into the Agreement using Digipropz as an alter ego for Pushnami, ESmith, CSmith, Briggs, Gayden, and Does 1-10.

241.    Zeeto performed all, or substantially all, of the significant things required

by the Agreement until July 2025.

242.    On July 3, 2025, Zeeto informed at least Defendants Pushnami, Digipropz, and ESmith that Defendants had were in breach of contract regarding the Agreement. On the same date, Zeeto informed Defendants that Zeeto would allow Defendants to cure the breach on or before July 11, 2025.

243.    Defendants did not cure the breach of the Agreement on or before July 11, 2025.

244.    On July 14, 2025, Zeeto's counsel informed Defendants' counsel that Zeeto was formally terminating the Agreement and exercising Zeeto's contractual right to withhold further payment.

245.    As set forth above, prior to July 2025, Defendants failed to perform multiple requirements of the Agreement.

246.    As set forth above, prior to July 2025, Defendants took multiple actions prohibited by the Agreement.

247.    Zeeto was harmed by Defendants' breach of the Agreement.

248.    Defendants' breach of the Agreement was a substantial factor in causing Zeeto's harm.

249.    As set forth above, Defendants entered into the Oral Agreement with Zeeto.

250.    Zeeto performed all, or substantially all, of the significant things required by the Oral Agreement, and has continued to perform all, or substantially all, of the

COMPLAINT                                    Case No. _____-cv-_____

significant things required by the Oral Agreement.

251.    As set forth above, prior to July 2025, Defendants failed to perform at least one requirement of the Oral Agreement.

252.    As set forth above, prior to July 2025, Defendants took actions prohibited by the Oral Agreement.

253.    Zeeto was harmed by Defendants' breach of the Oral Agreement.

254.    Defendants' breach of the Oral Agreement was a substantial factor in causing Zeeto's harm.

255.    Zeeto has been damaged in the amount of, at least, millions of dollars by Defendants' breach of contract.

256.    Zeeto has no adequate remedy at law for Defendants' breach of contract. The entire damage to Zeeto based on Defendants' breach of contract cannot be adequately remedied or compensated by monetary damages, such that equitable remedies including injunctive relief is necessary.

257.    Defendants knew or had reason to know that Defendants' acts in breach of contract was improper.  Upon information and belief, Defendants actively concealed Defendants' competing "path" system from Zeeto as the system was being developed and deployed.  Upon information and belief, ESmith instructed Defendants to avoid discussing Defendants' competing "path" system and to conceal the system from both Zeeto and from other Pushnami employees.  Upon information and belief, Defendants undertook concerted efforts to download vast quantities of reports (i.e., over 10,000

COMPLAINT                                          Case No. _____-cv-_____

reports) containing Zeeto's secret information for improper use after breaching the Agreement and the Oral Agreement and before Zeeto became aware of the breach.

258.     Additionally, some Defendants actively made false statements to Zeeto to conceal Defendants' breach of the Agreement and the Oral Agreement.

259.     Defendants engaged in a civil conspiracy to breach the Agreement and the Oral Agreement by reaching an agreement to engage in breach of contract.  Upon information and belief, each of Defendants were aware that the other Defendants planned to breach the Agreement and the Oral Agreement, construct a derivated and reverse-engineered "path" system, obtain Zeeto's secrets verbally through twice-weekly meetings with Zeeto, download large amounts of Zeeto's electronically stored secret information, and conceal the breach of the Agreement and the Oral Agreement from Zeeto.

260.     Defendants' breach of the Agreement and the Oral Agreement has been through willful and malicious acts.

261.     Defendants acted with a purpose and willingness to commit the acts of breach of the Agreement and the Oral Agreement.  Defendants' acts were not reasonable and were not taken in good faith.  Defendants acted with intent to cause injury to Zeeto.  Defendants' conduct was despicable and was conducted with a willful and knowing disregard for Zeeto's rights.  Defendants acted with knowing disregard of the probable consequences of their conduct and deliberately failed to avoid those consequences.

COMPLAINT                                        Case No. _____-cv-_____

262.    Defendants began the business relationship with Zeeto through use of an alter ego company named Digipropz.  Defendants used this alter ego company to enter into the Agreement with Zeeto.  Upon information and belief, Defendants used the alter ego company as an attempt to shield Defendants from liability with foreknowledge that Defendants would attempt to breach the Agreement.

263.    Defendants entered the Oral Agreement with Zeeto through use of bad faith actions.  Defendants used the Oral Agreement to prevent Zeeto from developing business that would compete with Defendants' derivative and reverse-engineered "path" business.  Upon information and belief, Defendants used the Oral Agreement to shield Defendants from competition with foreknowledge that Defendants would attempt to breach the Agreement.

264.    After entering the Agreement and continuing after entering the Oral Agreement, Defendants undertook significant efforts to learn Zeeto's secrets, including at least bi-weekly meetings to learn Zeeto's secrets and downloading thousands of reports including Zeeto's secrets.  Defendants undertook these efforts while secretly breaching the Agreement and the Oral Agreement through using Zeeto's trade secrets to construct a derivative and reverse-engineered "path" system that employed Zeeto's trade secret information.

265.    Certain Defendants made false statements directly to Zeeto to conceal the breach of the Agreement and the Oral Agreement.  Upon information and belief, Defendant ESmith instructed employees of Defendant Pushnami to conceal

COMPLAINT                                    Case No. _____-cv-_____

Defendants' efforts to construct the derivative and reverse-engineered "path" system. Upon information and belief, Defendants' actively and in concert engaged in acts of concealing Defendants' derivative and reverse-engineered "path" system from Zeeto.

266.    Zeeto has suffered and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

267.    Zeeto has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

(Breach of Implied-in-Fact Contract)
(Against Pushnami, Digipropz, ESmith, CSmith, and Does 1-10)

268.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

269.    This cause of action arises under California common law.

270.    This cause of action is pled in the alternative, in the event that Defendants contend that the Oral Agreement was not a contract.

271.    If the Oral Agreement was not a contract, the Oral Agreement was an implied-in-fact contract.

272.    Defendants' conduct was intentional when Defendants' provided Zeeto a list of "push" companies with which Zeeto could not work.

273.    Defendants' conduct was intentional when Pushnami insisted that Zeeto stop working with SDG based upon the agreement between Pushnami and Zeeto.

274.    Defendants knew, or had reason to know, that Zeeto would interpret Defendants' act of providing Zeeto a list of "push" companies with which Zeeto could

COMPLAINT                                    Case No. _____-cv-_____

not work as an agreement to enter into a contract.

275.    Defendants knew, or had reason to know, that Zeeto would interpret Pushnami's insistence that Zeeto stop working with SDG based upon the agreement between Pushnami and Zeeto as either a furtherance of an existing contract or an agreement to enter into a contract.

276.    Zeeto intentionally stopped work with SDG in furtherance of Zeeto's understanding that an oral contract existed between Zeeto and Defendants.

277.    Zeeto would not have stopped work with SDG absent Defendants' insistence that Zeeto stop working with SDG.

278.    Zeeto was harmed by Defendants actions through loss of the opportunity to do business with SDG.

279.    Defendants breached the understanding that Pushnami would not use any technology providers outside of Zeeto for a "path" monetization, including not developing its own technology for this purpose.

280.    Defendants worked in concert to develop Pushnami's own "path" monetization technology that is derivative and reverse-engineered from Zeeto's system for the purpose of "path" monetization.

281.    Defendants' breach of the implied-in-fact contract was a substantial factor in causing Zeeto's harm.

282.    Zeeto has been damaged in an amount estimated as millions of dollars by Defendants' breach of contract.

COMPLAINT                                           Case No. _____-cv-_____

283.    Zeeto has no adequate remedy at law for Defendants' breach of the implied-in-fact contract.  The entire damage to Zeeto based on Defendants' breach of the implied-in-fact contract cannot be adequately remedied or compensated by monetary damages, such that equitable remedies including injunctive relief is necessary.

284.    Defendants knew or had reason to know that Defendants' acts in breach of the implied-in-fact contract were improper.  Upon information and belief, Defendants actively concealed Defendants' competing "path" system from Zeeto as the system was being developed and deployed.  Upon information and belief, ESmith instructed Defendants to avoid discussing Defendants' competing "path" system and to conceal the system from both Zeeto and from other Pushnami employees.  Upon information and belief, Defendants undertook concerted efforts to download vast quantities of reports (i.e., over 10,000 reports) containing Zeeto's secret information for improper use after breaching the implied-in-fact contract and before Zeeto became aware of the breach.

285.    Additionally, some Defendants actively made false statements to Zeeto to conceal Defendants' breach of the implied-in-fact contract.

286.    Defendants engaged in a civil conspiracy to breach the implied-in-fact contract by reaching an agreement to engage in breach of contract.  Upon information and belief, each of Defendants were aware that the other Defendants planned to breach the implied-in-fact contract, construct a derivated and reverse-engineered "path" system, obtain Zeeto's secrets verbally through twice-weekly meetings with Zeeto, download

COMPLAINT                                              Case No. _____-cv-_____

large amounts of Zeeto's electronically stored secret information, and conceal the breach of the implied-in-fact contract from Zeeto.

287.    Defendants' breach of the implied-in-fact contract has been through willful and malicious acts.

288.    Defendants acted with a purpose and willingness to commit the acts of breach of the implied-in-fact contract.  Defendants' acts were not reasonable and were not taken in good faith.  Defendants acted with intent to cause injury to Zeeto.  Defendants' conduct was despicable and was conducted with a willful and knowing disregard for Zeeto's rights.  Defendants acted with knowing disregard of the probable consequences of their conduct and deliberately failed to avoid those consequences.

289.    Defendants entered the implied-in-fact contract with Zeeto through use of bad faith actions.  Defendants used the implied-in-fact contract to prevent Zeeto from developing business that would compete with Defendants' derivative and reverse-engineered "path" business.  Upon information and belief, Defendants used the implied-in-fact contract to shield Defendants from competition with foreknowledge that Defendants would attempt to breach the Agreement.

290.    After entering the Agreement and continuing after entering the implied-in-fact contract, Defendants undertook significant efforts to learn Zeeto's secrets, including at least bi-weekly meetings to learn Zeeto's secrets and downloading thousands of reports including Zeeto's secrets.  Defendants undertook these efforts while secretly breaching the Agreement and the implied-in-fact contract through using Zeeto's trade

secrets to construct a derivative and reverse-engineered "path" system that employed Zeeto's trade secret information.

291.    Certain Defendants made false statements directly to Zeeto to conceal the breach of the implied-in-fact contract.  Upon information and belief, Defendant ESmith instructed employees of Defendant Pushnami to conceal Defendants' efforts to construct the derivative and reverse-engineered "path" system.  Upon information and belief, Defendants' actively and in concert engaged in acts of concealing Defendants' derivative and reverse-engineered "path" system from Zeeto.

292.    Zeeto has suffered and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

293.    Zeeto has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

(Violation of Digital Millenium Copyright Act)
(Against Pushnami, Digipropz, ESmith, CSmith, and Does 1-10)

294.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

295.    This claim arises under 17 U.S.C. §§1201 et seq.

296.    Defendants' acts of distributing Zeeto's copyrighted works are acts of copyright infringement.  Each distribution of a copyrighted work of Zeeto is a separate act of copyright infringement.

297.    Defendants knowingly and with the intent to enable, facilitate, and conceal their own copyright infringement provided copyright management information that is

COMPLAINT                                                    Case No. _____-cv-_____

false when distributing Zeeto's copyrighted works.

298.    Defendants knowingly and with the intent to enable, facilitate, and conceal their own copyright infringement distributed copyright management information that is false when distributing Zeeto's copyrighted works.

299.    Defendants, without the authority of Zeeto or the law, knowingly and intentionally removed Zeeto's copyright management information from Zeeto's copyrighted works.

300.    Defendants, without the authority of Zeeto or the law, knowingly and intentionally distributed copyright management information with Zeeto's copyrighted works, knowing that Zeeto's copyright management information had been removed and altered.

301.    Defendants, without the authority of Zeeto or the law, knowingly and intentionally distributed Zeeto's copyrighted works, knowing that Zeeto's copyright management information had been removed and altered.

302.    Defendants knew, or had reasonable grounds to know, that Defendants' acts of removal and falsification of copyright management information would enable, facilitate, and conceal Defendants' copyright infringement.

303.    Zeeto has been injured by Defendants' copyright infringement in connection with Defendants' removal of Zeeto's copyright management information and Defendants' falsification of copyright management information.

304.    Pursuant to 17 U.S.C. §1203(c), Zeeto is entitled to damages in the amount

COMPLAINT                                        Case No. _____-cv-_____

of the greater of Zeeto's actual damages, Defendants' additional profits, or statutory

damages in the amount of not less than $2,500 or more than $25,000 for each violation

of 17 U.S.C. §1202.

305.    Upon information and belief, Defendants have distributed Zeeto's

copyrighted works with falsified copyright management information thousands of times.

Upon information and belief, Zeeto's statutory damages are millions of dollars.

306.    Plaintiff has suffered, and will continue to suffer, irreparable harm from

Defendants' acts and conduct complained of herein, unless restrained by law.

307.    Plaintiff has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF

(Fraud)
(Against Pushnami, Digipropz, ESmith, Briggs, and Does 1-10)

308.    Plaintiff realleges and incorporates by reference all previous paragraphs of

this Complaint as if set forth fully herein.

309.    This claim arises under California Civil Code §1709, which states, "One

who willfully deceives another with intent to induce him to alter his position to his injury

or risk, is liable for any damage which he thereby suffers."

310.    In late 2024, Zeeto's employees heard credible rumors that Defendants

were developing their own "path" system to replace Zeeto's "path" system.

311.    If Zeeto had known such rumors to be true, Zeeto would have immediately

terminated the Agreement and revoked Defendants' access to Zeeto's secret

information.  Upon information and belief, Defendants knew that Zeeto would take

COMPLAINT                                          Case No. _____-cv-_____

such actions but Defendants still needed access to Zeeto's secret information and the revenue supplied by the collaboration under the Agreement.

312. Upon hearing such rumors, Zeeto directly asked Defendants whether they were developing their own "path" system.

313. Defendants categorically denied that Defendants were developing their own "path" system. Defendants' denial was willful and false.

314. Upon information and belief, by late 2024, Defendants were developing their own "path" system.

315. As recently as June 2025, Defendants continued asserting their willful and false position that Defendants intended to continue working with Zeeto rather than shifting Defendants' revenue-generating traffic to Defendants' own "path" system. Defendant Briggs wrote an email to Zeeto and copied Defendant ESmith, in which Briggs stated, among other things, "We have had a great partnership together and I am sure that we can continue that …"

316. Both Briggs and ESmith knew the June 2025 statement to be false. By June 2025, Defendants had been operating their own "path" system for at least four months. Upon information and belief, Defendants had been operating their own "path" system since at least November 1, 2024.

317. By June 2025, the monthly revenue generated through the Agreement had dropped to less than 4% of the average monthly revenue that had been generated through the Agreement in 2024. This drop in revenue occurred due to Defendants

COMPLAINT                                         Case No. _____-cv-_____

shifting traffic from Zeeto's "path" system to Defendants' "path" system.

318.    By June 2025, Briggs and ESmith knew that Defendants had no intention of continuing a "great partnership" with Zeeto.  Thus, Defendants knew that the statement in Briggs' June 2025 email was willful and false.

319.    Despite Defendants' knowledge that Briggs had made willfully false statements to Zeeto, Defendants continued accessing Zeeto's computer systems. Defendants downloaded over 1,500 reports containing Zeeto's secret information in June 2025.  Defendants would not have had access to such reports without the willfully false statement by Briggs.

320.    Between January 2025 and May 2025, Defendants accessed Zeeto's computer systems and downloaded over 25,000 reports containing Zeeto's secret information.  Defendants would not have had access to such reports without Defendants' willfully false statements in late 2024.

321.    Defendants' downloading of vast quantities of Zeeto's trade secret information corresponds to believed launch of Defendants' Pivot system on or about November 1, 2024.  Prior to November 2024, Defendants downloaded an average of approximately 200 to 400 reports per month.  In November 2024, Defendants downloaded over 4,000 reports.  Defendants sustained a high volume of downloads between November 2024 and May 2025.  Upon information and belief, Defendants initiated an intensive data extraction campaign to misappropriate Zeeto's trade secrets

COMPLAINT                                                    Case No. _____-cv-_____

before Zeeto became aware of Defendants' breach of the Agreement.

322.    In 2025, Defendants continued to have verbal discussions with Zeeto in which Defendants asked questions and extracted secret information from Zeeto under Defendants' deception that the secret information was needed or useful to the joint work between Defendants and Zeeto under the Agreement.  Defendants would not have had access to any such secret information from Zeeto absent Defendants' willfully false statements to Zeeto.

323.    Upon information and belief, Defendants were developing their own "path" system separate from Zeeto's "path" system for at least three to six months prior to actively using that "path" system by November 1, 2024.

324.    Upon information and belief, Defendants have been making willfully false statements to Zeeto for more than a year.

325.    Upon information and belief, Defendants have been making the willfully false statements to Zeeto for more than a year to induce Zeeto to continue to provide Defendants with Zeeto's secret information under the Agreement rather than terminating the Agreement and terminating Defendants' access to Zeeto's secret information.

326.    Defendants intended Zeeto to rely upon Defendants' false representations.

327.    Zeeto was harmed by Defendants' improper access to Zeeto's secret information.

328.    Zeeto's reliance on Defendants' false representations was a substantial

COMPLAINT                                                    Case No. _____-cv-_____

factor in causing harm to Zeeto.

329.    Defendants engaged in a civil conspiracy to misappropriate Zeeto's trade secrets by reaching an agreement to willfully deceive Zeeto.  Upon information and belief, each of Defendants were aware that the other Defendants planned to willfully deceive Zeeto, construct a derivated and reverse-engineered "path" system, obtain trade secrets verbally through twice-weekly meetings with Zeeto, download large amounts of Zeeto's electronically stored trade secret information, and conceal the willful deception from Zeeto.

330.    Zeeto has been damaged in the amount of, at least, millions of dollars by Defendants' willful deception of Zeeto.

331.    Zeeto has no adequate remedy at law for Defendants' willful deception of Zeeto.  The entire damage to Zeeto based on Defendants' willful deception of Zeeto cannot be adequately remedied or compensated by monetary damages, such that equitable remedies including injunctive relief is necessary.

332.    Defendants' willful deception of Zeeto has been through willful and malicious acts.

333.    Defendants acted with a purpose and willingness to commit the acts of willful deception of Zeeto.  Defendants' acts were not reasonable and were not taken in good faith.  Defendants acted with intent to cause injury to Zeeto.  Defendants' conduct was despicable and was conducted with a willful and knowing disregard for Zeeto's rights.  Defendants acted with knowing disregard of the probable consequences of their

COMPLAINT                                                    Case No. _____-cv-_____

conduct and deliberately failed to avoid those consequences.

334.    Defendants began the business relationship with Zeeto through use of an alter ego company named Digipropz.  Defendants used this alter ego company to enter into the Agreement with Zeeto.  Upon information and belief, Defendants used the alter ego company as an attempt to shield Defendants from liability with foreknowledge that Defendants would attempt to willfully deceive Zeeto.

335.    After entering the Agreement, Defendants undertook significant efforts to learn Zeeto's trade secrets, including at least bi-weekly meetings to learn Zeeto's trade secrets and downloading thousands of reports including Zeeto's trade secrets. Defendants undertook these efforts while secretly willfully deceiving Zeeto and breaching the Agreement through using Zeeto's trade secrets to construct a derivative and reverse-engineered "path" system that employed Zeeto's trade secret information.

336.    Certain Defendants made false statements directly to Zeeto to conceal the breach of the Agreement, including the trade secret misappropriation.  Upon information and belief, Defendant ESmith instructed employees of Defendant Pushnami to conceal Defendants' efforts to construct the derivative and reverse-engineered "path" system. Upon information and belief, Defendants' actively and in concert engaged in acts of concealing Defendants' derivative and reverse-engineered "path" system from Zeeto including through willful deception.

337.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

COMPLAINT                                                    Case No. _____-cv-_____

338.   Plaintiff has no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF

(Fraud Based on Contract)
(Against Pushnami, Digipropz, ESmith, Briggs, Gayden, and Does 1-10)

339.   Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

340.   This claim arises under California Civil Code §§1565 et seq.

341.   Cal. Civil Code §1565 provides that "The consent of the parties to a contract must be: 1. Free; …" Cal. Civil Code §1567 provides that "An apparent consent is not real or free when obtained through: … 3. Fraud; …" Cal. Civil Code §1571 provides, "Fraud is either actual or constructive." Cal. Civil Code §1572 provides, "Actual fraud … consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:  … 3. The suppression of that which is true, by one having knowledge or belief of the fact; 4. A promise made without any intention of performing it; or, 5. Any other act fitted to deceive."

342.   The Agreement strictly limited the usage of Zeeto's services, stating, "You may only use the Services as expressly permitted by this Agreement and any applicable laws." Upon information and belief, at the time of signing the Agreement, Defendants knew this statement to be false, did not intend to perform this promise, and intended to deceive Zeeto through this promise.

343.   The Agreement contained a strict limitation policy regarding use, stating,

COMPLAINT                                        Case No. _____-cv-_____

"You agree to not hide, cloak or obfuscate how you use Zeeto Technology, or modify, alter, reverse engineer, disassemble, decompile, decode, or create derivative works of any part of the Zeeto Platform."  Upon information and belief, at the time of signing the Agreement, Defendants knew this statement to be false, did not intend to perform this promise, and intended to deceive Zeeto through this promise.

344.    As set forth herein, Defendants hid, cloaked, and obfuscated how they used the Zeeto Technology in violation of the Agreement.

345.    As set forth herein, Defendants reverse engineered and created derivative works of parts of the Zeeto Platform in violation of the Agreement.

346.    The Agreement further limited Defendants' use of Zeeto's Platform, stating, "You may not copy, modify, distribute, sell, license, lease, or create derivative works of any part of the Zeeto Platform or other included software, nor may you reverse engineer or attempt to extract the source code of that software, unless laws prohibit those restrictions or you have our written permission."  Upon information and belief, at the time of signing the Agreement, Defendants knew this statement to be false, did not intend to perform this promise, and intended to deceive Zeeto through this promise.

347.    As set forth herein, Defendants copied, modified, distributed, and created derivative works of parts of the Zeeto Platform without written permission in violation of the Agreement.

348.    As set forth herein, Defendants reverse engineered parts of the Zeeto

COMPLAINT                                    Case No. _____-cv-_____

software without written permission in violation of the Agreement.

349.    In the Agreement, Defendants made representations and warranties that were false, by agreeing that, "You represent and warrant that … your use of the Services and the Zeeto Technology will be in accordance with all applicable law;…"  Upon information and belief, at the time of signing the Agreement, Defendants knew this statement to be false, did not intend to perform this promise, and intended to deceive Zeeto through this promise.

350.    As set forth herein, this representation and warranty by Defendants was false and was falsely made to induce Zeeto to enter the Agreement.

351.    Defendants intended that Zeeto rely upon Defendants' false statements and false promises.

352.    Zeeto relied upon Defendants' false statements and false promises.

353.    Zeeto was harmed by Defendants' false statements and false promises.

354.    Zeeto's reliance on Defendants' false statements and false promises was a substantial factor in causing Zeeto's harm.

355.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

356.    Plaintiff has no adequate remedy at law.

## **EIGHTH CLAIM FOR RELIEF**

(Constructive Fraud)
(Against Pushnami, Digipropz, ESmith, Briggs, Gayden, and Does 1-10)

357.    Plaintiff realleges and incorporates by reference all previous paragraphs of

62

COMPLAINT                                          Case No. _____-cv-_____

this Complaint as if set forth fully herein.

358.    This claim arises under California Civil Code §§1565 et seq.

359.    Cal. Civil Code §1565 provides that "The consent of the parties to a contract must be: 1. Free; …"  Cal. Civil Code §1567 provides that "An apparent consent is not real or free when obtained through: … 3. Fraud; …"  Cal. Civil Code §1571 provides, "Fraud is either actual or constructive."  Cal. Civil Code §1573 provides, "Constructive fraud consists: In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him…"

360.    This claim is pled in the alternative to the Seventh Claim for Relief, with respect to any Defendant who might not have had an "actually fraudulent intent."  As such, each of the allegations of the Seventh Claim for Relief are specifically relied upon herein.

361.    In California, each contract imposes upon each party a duty of good faith and fair dealing.

362.    In California, each contract imposes upon each party a duty to perform with reasonable care.

363.    Upon information and belief, at the time of signing the Agreement, Defendants knew various statements to be false, did not intend to perform various promises, and intended to deceive Zeeto through various statements and promises. Even if Defendants did not have an actual fraudulent intent, Defendants breached their

COMPLAINT                                          Case No. _____-cv-_____

duty of good faith and fair dealing and breached their duty to perform with reasonable care.

364.    Zeeto's consent to the contract was not free because it was obtained through Defendants' actual or constructive fraud.

365.    Zeeto was harmed by Defendants' conduct.

366.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

367.    Plaintiff has no adequate remedy at law.

## NINTH CLAIM FOR RELIEF

(Tortious Interference With Prospective Economic Relations)
(Against Pushnami, Digipropz, ESmith, CSmith, Briggs, and Does 1-10)

368.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

369.    This action arises under at least California common law.

370.    Zeeto had an economic relationship with SDG.

371.    Zeeto's economic relationship with SDG had resulted in economic benefit to Zeeto in the form of revenues and would have resulted in significant ongoing economic benefit to Zeeto in the form of revenues.

372.    Defendants' knew of Zeeto's relationship with SDG because Zeeto informed Defendants that Zeeto had entered a contract with SDG.

373.    Defendants required Zeeto to terminate the contract between Zeeto and

COMPLAINT                                    Case No. _____-cv-_____

SDG and terminate the economic relationship with SDG.

374.    By engaging in the aforementioned conduct, Defendants knew that disruption of the economic relationship between Zeeto and SDG was certain or substantially certain to occur.

375.    Zeeto's economic relationship with SDG was disrupted based on Defendants' actions.

376.    Zeeto was harmed by loss of the expected significant ongoing revenues.

377.    Defendants' conduct was a substantial factor in causing harm to Zeeto.

378.    Defendants knew or had reason to know that Defendants' acts of interference with the economic relationship between Zeeto and SDG were improper. Upon information and belief, Defendants actively concealed Defendants' competing "path" system from Zeeto as the system was being developed and deployed.  Upon information and belief, ESmith instructed Defendants to avoid discussing Defendants' competing "path" system and to conceal the system from both Zeeto and from other Pushnami employees.  Upon information and belief, Defendants undertook concerted efforts to download vast quantities of reports (i.e., over 10,000 reports) containing Zeeto's secret information for improper use after interference with the economic relationship between Zeeto and SDG and before Zeeto became aware of the impropriety of the interference.

379.    Additionally, some Defendants actively made false statements to Zeeto to conceal the impropriety of Defendants' interference with the economic relationship

COMPLAINT                                             Case No. _____-cv-_____

between Zeeto and SDG.

380.   Defendants engaged in a civil conspiracy to interfere with the economic relationship between Zeeto and SDG by reaching an agreement to engage in interference with the economic relationship between Zeeto and SDG.  Upon information and belief, each of Defendants were aware that the other Defendants planned to improperly interfere with the economic relationship between Zeeto and SDG, construct a derivated and reverse-engineered "path" system, obtain Zeeto's secrets verbally through twice-weekly meetings with Zeeto, download large amounts of Zeeto's electronically stored secret information, and conceal the impropriety of the interference with the economic relationship between Zeeto and SDG from Zeeto.

381.   Defendants' interference with the economic relationship between Zeeto and SDG has been through willful and malicious acts.

382.   Defendants acted with a purpose and willingness to commit the acts of interference with the economic relationship between Zeeto and SDG.  Defendants' acts were not reasonable and were not taken in good faith.  Defendants acted with intent to cause injury to Zeeto.  Defendants' conduct was despicable and was conducted with a willful and knowing disregard for Zeeto's rights.  Defendants acted with knowing disregard of the probable consequences of their conduct and deliberately failed to avoid those consequences.

383.   Defendants improperly interfered with the economic relationship between Zeeto and SDG through bad faith actions.  Defendants used the an oral or implied-in-

COMPLAINT                                        Case No. _____-cv-_____

fact contract to prevent Zeeto from developing business that would compete with Defendants' derivative and reverse-engineered "path" business. Upon information and belief, Defendants used an oral or implied-in-fact contract to shield Defendants from competition with foreknowledge that Defendants would attempt to breach the Agreement.

384. After entering the Agreement and continuing after entering the implied-in-fact or oral contract, Defendants undertook significant efforts to learn Zeeto's secrets, including at least bi-weekly meetings to learn Zeeto's secrets and downloading thousands of reports including Zeeto's secrets. Defendants undertook these efforts while secretly breaching the Agreement and the implied-in-fact or oral contract through using Zeeto's trade secrets to construct a derivative and reverse-engineered "path" system that employed Zeeto's trade secret information.

385. Certain Defendants made false statements directly to Zeeto to conceal the breach of the implied-in-fact or oral contract and the impropriety of Defendants' interference with the economic relationship between Zeeto and SDG. Upon information and belief, Defendant ESmith instructed employees of Defendant Pushnami to conceal Defendants' efforts to construct the derivative and reverse-engineered "path" system. Upon information and belief, Defendants' actively and in concert engaged in acts of concealing Defendants' derivative and reverse-engineered "path" system from Zeeto.

386. Plaintiff has suffered, and will continue to suffer, irreparable harm from

COMPLAINT                                    Case No. _____-cv-_____

1   Defendants' acts and conduct complained of herein, unless restrained by law.

2       387.    Plaintiff has no adequate remedy at law.

3
4               **TENTH CLAIM FOR RELIEF**

5           (Violation of California Penal Code §502)
            (Against Pushnami, Digipropz, Briggs, and Does 1-10)

6       388.    Plaintiff realleges and incorporates by reference all previous paragraphs of

7   this Complaint as if set forth fully herein.
8
9       389.    This claim arises under Cal. Penal Code §502.

10      390.    Zeeto is the owner of the Zeeto computer systems identified in this
11
12  complaint and of Zeeto's secret data stored on those systems and identified in this

13  complaint.

14      391.    Defendants knowingly accessed Zeeto's computer systems and Zeeto's
15
16  secret data stored on those systems to commit the acts set forth below.

17      392.    Defendants know that the Agreement limits the use of access to Zeeto's

18  computer systems to uses permitted in the Agreement.
19
20      393.    Defendants know that the Agreement limits the use of Zeeto's secret data

21  stored on Zeeto's computer systems to uses permitted in the Agreement.

22      394.    Defendants, without permission, downloaded and used Zeeto's secret data

23  for purposes not permitted in the Agreement to devise and execute a scheme or artifice
24
25  to defraud and deceive Zeeto and to wrongfully obtain money and data in violation of

26  the Agreement.

27      395.    Defendants, without permission, took, copied, and made use of data from
28

COMPLAINT                                    Case No. _____-cv-_____

Zeeto's computer system for purposes not permitted in the Agreement, in violation of the Agreement.

396.    Defendants, without permission, used and caused to be used computer services on Zeeto's computer systems for purposes not permitted in the Agreement, in violation of the Agreement.

397.    Defendants, without permission, accessed and caused to be accessed Zeeto's computer systems for purposes not permitted in the Agreement, in violation of the Agreement.

398.    Because Defendants' knowing access of Zeeto's computer systems in connection with the acts recited in the preceding paragraphs were outside of the acts permitted by the Agreement, Defendants' conduct was without Zeeto's permission.

399.    Zeeto has been harmed and is continuing to be harmed by Defendants' conduct.

400.    Defendants' conduct was a substantial factor in causing Zeeto's harm.

401.    Defendants knew or had reason to know that Defendants' acts in violation of Cal. Penal Code §502 were improper.  Upon information and belief, Defendants actively concealed Defendants' competing "path" system from Zeeto as the system was being developed and deployed.  Upon information and belief, ESmith instructed Defendants to avoid discussing Defendants' competing "path" system and to conceal the system from both Zeeto and from other Pushnami employees.  Upon information and belief, Defendants undertook concerted efforts to download vast quantities of

COMPLAINT                                    Case No. _____-cv-_____

reports (i.e., over 10,000 reports) containing Zeeto's secret information for improper use in violation of Cal. Penal Code §502 and before Zeeto became aware of the violation of Cal. Penal Code §502.

402.    Additionally, some Defendants actively made false statements to Zeeto to conceal the impropriety of Defendants' violation of Cal. Penal Code §502.

403.    Defendants engaged in a civil conspiracy to violate Cal. Penal Code §502 by reaching an agreement to engage in violation of Cal. Penal Code §502.  Upon information and belief, each of Defendants were aware that the other Defendants planned to violate Cal. Penal Code §502, construct a derivated and reverse-engineered "path" system, obtain Zeeto's secrets verbally through twice-weekly meetings with Zeeto, download large amounts of Zeeto's electronically stored secret information, and conceal the violation of Cal. Penal Code §502 from Zeeto.

404.    Defendants' violation of Cal. Penal Code §502 has been through willful and malicious acts.

405.    Defendants acted with a purpose and willingness to commit the acts of violation of Cal. Penal Code §502.  Defendants' acts were not reasonable and were not taken in good faith.  Defendants acted with intent to cause injury to Zeeto.  Defendants' conduct was despicable and was conducted with a willful and knowing disregard for Zeeto's rights.  Defendants acted with knowing disregard of the probable consequences of their conduct and deliberately failed to avoid those consequences.

406.    After entering the Agreement and continuing after entering the implied-in-

COMPLAINT                                          Case No. _____-cv-_____

fact or oral contract, Defendants undertook significant efforts to learn Zeeto's secrets, including at least bi-weekly meetings to learn Zeeto's secrets and downloading thousands of reports including Zeeto's secrets. Defendants undertook these efforts while secretly breaching the Agreement and the implied-in-fact or oral contract through using Zeeto's trade secrets to construct a derivative and reverse-engineered "path" system that employed Zeeto's trade secret information.

407.   Certain Defendants made false statements directly to Zeeto to conceal the violation of Cal. Penal Code §502. Upon information and belief, Defendant ESmith instructed employees of Defendant Pushnami to conceal Defendants' efforts to construct the derivative and reverse-engineered "path" system. Upon information and belief, Defendants' actively and in concert engaged in acts of concealing Defendants' derivative and reverse-engineered "path" system from Zeeto.

408.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

409.   Plaintiff has no adequate remedy at law.

## ELEVENTH CLAIM FOR RELIEF

(California Unfair Competition)
(Against Pushnami, Digipropz, ESmith, CSmith, Briggs, and Does 1-10)

410.   Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

411.   This cause of action arises under Cal. Bus. & Prof. Code §17200 et seq.

412.   Defendants have engaged in unfair competition as defined by Cal. Bus. &

71

Prof. Code §17200, including at least unlawful, unfair, and fraudulent business acts or practices.

413.    As set forth above in claims for relief numbers one through ten, Defendants have engaged in trade secret misappropriation, breach of contract, breach of implied-in-fact contract, violations of the Digital Millenium Copyright Act, fraud, fraud based on contract, constructive fraud, tortious interference with prospective business advantage, and violation of California Penal Code §502.  Defendants acts have been unlawful, unfair, and based upon fraud.

414.    Defendants acts have caused and continue to cause loss, damage, and injury to Plaintiff and to the purchasing public, constituting unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code § 17200 et seq.

415.    This conduct, together with Defendants' other acts alleged herein constitute unfair, unlawful, and fraudulent business acts and practices under California Business and Professions Code § 17200, because such acts are forbidden by various state and federal laws and are unscrupulous, unfair, and injurious to Plaintiff. Defendants' acts have irreparably damaged Plaintiff and the consuming public and will continue to do so unless restrained by this Court, and Plaintiff is without an adequate remedy at law.

416.    As a result of Defendants' wrongful conduct, Plaintiff is entitled to, among other relief, an order enjoining and restraining Defendants from further unlawful, unfair, and fraudulent business acts and practices, and restoring to Plaintiff any funds that were wrongfully collected by Defendants.

COMPLAINT                                                    Case No. _____-cv-_____

# TWELFTH CLAIM FOR RELIEF

(Common Law Unfair Competition)
(Against Pushnami, Digipropz, ESmith, CSmith, Briggs, and Does 1-10)

417.   Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

418.   This claim arises under California common law.

419.   Defendants have engaged in unfair competition under the common law, including at least unlawful, unfair, and fraudulent business acts or practices.

420.   As set forth above in claims for relief numbers one through ten, Defendants have engaged in trade secret misappropriation, breach of contract, breach of implied-in-fact contract, violations of the Digital Millenium Copyright Act, fraud, fraud based on contract, constructive fraud, tortious interference with prospective business advantage, and violation of California Penal Code §502.  Defendants acts have been unlawful, unfair, and based upon fraud.

421.   Defendants acts have caused and continue to cause loss, damage, and injury to Plaintiff and to the purchasing public, constituting unlawful, unfair, and fraudulent business practices.

422.   This conduct, together with Defendants' other acts alleged herein constitute unfair, unlawful, and fraudulent business acts and practices under the common law, because such acts are forbidden by various state and federal laws and are unscrupulous, unfair, and injurious to Plaintiff. Defendants' acts have irreparably damaged Plaintiff and the consuming public and will continue to do so unless restrained

COMPLAINT                                          Case No. _____-cv-_____

1    by this Court, and Plaintiff is without an adequate remedy at law.

2        423.    As a result of Defendants' wrongful conduct, Plaintiff is entitled to, among

3    other relief, an order enjoining and restraining Defendants from further unlawful, unfair,

4    and fraudulent business acts and practices, and restoring to Plaintiff any funds that were

5    wrongfully collected by Defendants.

## EXPECTED THIRTEENTH CLAIM FOR RELIEF

(Copyright Infringement)
(Against Pushnami, Digipropz, ESmith, CSmith, and Does 1-10)

424.    Zeeto expects to add a claim arising under Title 17 of the United States

Code, but cannot yet add the claim based on the Supreme Court's ruling in *Fourth Fourth*

*Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 586 U.S. 296 (2019), which requires that

copyright registration certificates be issued before a party can assert a claim of copyright

infringement.

425.    The following assertions are set forth to inform Defendants of the basic

facts underlying the expected claim.

426.    Zeeto has created numerous digital images that are works of authorship

fixed in a tangible medium (the "Works").

427.    Zeeto owns copyright rights in the Works.

428.    Zeeto requested registration of certain of the Works with the United States

Copyright Office.

429.    Zeeto's copyright registration certificates have not yet issued.

430.    Zeeto named the Works using file names.  Exemplary file names of the

COMPLAINT                                        Case No. _____-cv-_____

Works include: ps_bk_50; ps_walmart_500; ps_smsngflipphone_1000; ps_amzbx_100; and ps_paypal_1000.

431. By virtue of working together with Zeeto under the Agreement, Defendants had access to the Works. Each of the Works was used and distributed for viewing by users in one or more of the "paths" on which Zeeto and Defendants worked together. Each of the Works was stored on a computer server in a manner that allowed a computer user to download the digital image by referencing the file name with appropriate software, including Internet web browsing software.

432. Defendants downloaded and copied each of the Works to Defendants' computer systems.

433. The copies of the Works made by Defendants appear to a viewer to be exact copies of each of the Works, including even the identical file names that Zeeto used for the Works.

434. Defendants distributed each of the Works without authorization by providing copies of the Works to users of Defendants' Pivot system.

435. Defendants' actions violate Zeeto's exclusive rights under at least 17 U.S.C. §106. Therefore, Defendants' actions constitute copyright infringement under at least 17 U.S.C. §501.

436. Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. §504(c)(2), in an attempt to make a derivative, reverse-engineered, copy of

COMPLAINT                                    Case No. _____-cv-_____

Plaintiffs' "paths" for Defendants that were developed under the Agreement.

437.    Zeeto has suffered monetary damages due to Defendants' infringement of Zeeto's copyrights in the Works.

438.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

439.    Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to:

(a)    Enter judgment for Plaintiff on this Complaint on all causes of action asserted herein;

(b)    Enter an Order enjoining Defendants, their agents, officers, servants, employees, attorneys, and all persons in active concert or participation with Defendants who receive notice of the order from further trade secret misappropriation, breach of contract, breach of implied-in-fact contract, violation of Digital Millenium Copyright Act, fraud, fraud based on contract, constructive fraud, tortious interference with prospective economic relations, violation of Cal. Penal Code §502, and unfair competition;

(c)    Award Plaintiff the greater of actual damages, statutory damages, and disgorgement of Defendants' profits;

(d)    Award Plaintiff treble damages;

(f)    Award Plaintiff punitive damages;

(g)    Award Plaintiff pre-judgment and post-judgment interest and costs;

(h)    Award Plaintiff its attorneys' fees, costs, and expenses; and

(i)    Award Plaintiff such further relief to which the Court finds Plaintiff is entitled under law or equity.

76

COMPLAINT                                                          Case No. _____-cv-_____

1    Dated:  August 7, 2025               Respectfully submitted,

2                        AMIN, TUROCY & WATSON LLP

3

4

5                By: ____/s/ Andrew T. Oliver_____

6                   ANDREW T. OLIVER

7                   Andrew T. Oliver (Cal Bar No. 226098)
                  Vinay V. Joshi (Cal Bar No. 213487)

8                   AMIN, TUROCY & WATSON LLP
                  160 West Santa Clara Street, Suite 975

9                   San Jose, CA  95113
                  Telephone: 650-393-0634

10                  Email:         aoliver@ATWiplaw.com
                              vjoshi@ATWiplaw.com

11

12                   Attorneys for Plaintiff
                  ZeetoGroup, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                       77                 Case No. _____-cv-_____

1

## DEMAND FOR JURY TRIAL

2              Pursuant to Federal Rule of Civil Procedure 38(b) and CivLR 38.1, Plaintiff

3    hereby demands a trial by jury on all issues triable in this action.

4
     Dated:  August 7, 2025                          Respectfully Submitted,
5
                                                     AMIN, TUROCY & WATSON LLP
6

7

8
                                        By: ____/s/ Andrew T. Oliver_____
9                                           ANDREW T. OLIVER

10                                          Andrew T. Oliver (Cal Bar No. 226098)
                                            Vinay V. Joshi (Cal Bar No. 213487)
11                                          AMIN, TUROCY & WATSON LLP
                                            160 West Santa Clara Street, Suite 975
12                                          San Jose, CA  95113
                                            Telephone: 650-393-0634
13                                          Email:       aoliver@ATWiplaw.com
                                                         vjoshi@ATWiplaw.com
14

15                                          Attorneys for Plaintiff
                                            ZeetoGroup, LLC
16

17

18

19

20

21

22

23

24

25

26

27

28
     COMPLAINT                              78              Case No. _____-cv-_____